IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Steven W. Baxley, | ) | |
|               Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:16-cv-00901-JMC |
| | ) | |
| Savannah River Nuclear Solutions, LLC | ) | **ORDER AND OPINION** |
| and Savannah River Nuclear Solutions,[1] | ) | |
| | ) | |
|               Defendants. | ) | |

This matter is before the court upon review of the Magistrate Judge's Report and Recommendation ("Report") (ECF No. 49), recommending that Defendant Savannah River Nuclear Solutions, LLC's ("SRNS") Motion for Summary Judgment (ECF No. 32) be granted. For the reasons stated below, the court **ACCEPTS** the Magistrate Judge's Report (ECF No. 49).

## I.    RELEVANT FACTUAL BACKGROUND

Plaintiff has been an employee at the Savannah River Site (SRS) since 1989. (ECF No. 32-2 at 8 (28:4-8.) Plaintiff worked as a Production Operator, and as a requirement for his job, he was required to obtain and maintain all qualifications. (*Id.* at 17 (64:3-14); *see also* ECF No. 32-3 at 21.) In 2009, Plaintiff was placed on work restriction at the request of his doctor because he has sleep apnea, and because of this restriction he was limited to working only day shifts. (ECF No. 32-2 at 10 (34:20-35:14).) Plaintiff applied for a Grade 18 Production Operator position at the Savannah River National Laboratory ("SRNL") and in October 2012, he began his

---

[1] Defendant asserts that it is the proper entity and that "Savannah River Nuclear Solutions" is not the name of a legal entity. (ECF No. 32 at 1 n.1.) At the hearing on this matter, Plaintiff's counsel agreed that Defendant Savannah River Nuclear Solutions, LLC is the proper Defendant for this matter. For these reasons the court **DIRECTS** the clerk to strike Savannah River Nuclear Solutions from the caption.

1

employment. (*Id.* at 14 (51:19-22).)

As a Production Operator at SRNL, Plaintiff was required to undergo training specific to that facility and obtain all required qualifications. (*Id.* at 17 (64:3-17).) Part of this training was learning the operations of three different watch stations (776-A Watchstation, Facility Operator Watchstation, Control Area Watchstation). (*Id.* at 12-13 (44:12-46:2); *see also* ECF No. 32-3 at 21.)

Plaintiff qualified for the 776-A Watchstation, and moved to training for the Facility Operator Watchstation. (ECF No. 32-3 at 17 (62:1-6).) As part of his Facility Operator Watchstation training, Plaintiff had to take part in a "walkthrough" with his manager, Kenny Franklin. (ECF No. 32-2 at 15 (53:5-19).) In an August 2013 walkthrough, Franklin tested Plaintiff's knowledge of the facility's operations by asking him questions related to various operations and procedures in each of the areas of the facility. (ECF No. 32-3 at 13 (46:10-22).) Plaintiff had to pass this oral examination in order to be qualified for the Facility Operator Watchstation which was required for Production Operators, and if he could not qualify he would have to be reassigned to another position. (*Id.* at 8 (27:18-28:4).) Plaintiff did not provide Franklin with satisfactory responses to some of the questions on the walkthrough, therefore, Plaintiff did not qualify for the Facility Operator's Watchstation. (*Id.* at 5 (16:3-21).) However, Franklin did not fail Plaintiff, instead he suspended the test to allow Plaintiff the chance to learn the operations and procedures of the Facility Operator Watchstation. (*Id.* at 15 (54:24-55:25).) By doing so, Plaintiff was not immediately reassigned for training with a different group. (*Id.* at (56:1-14).)

One of the areas where Plaintiff needed additional training was on ventilation processes, including procedures concerning ventilation hoods in the laboratories. (ECF No. 32-2 at 18 (65:1-66:25); (68:5-11).) The ventilation hoods could not be turned off during the day when the

2

technicians were usually working because the ventilation hoods removed radioactive materials from the air. (*Id.* at 18 (66:5-67:5).) As a result of the ventilation hoods not being able to be turned off during the day, Franklin stated that Plaintiff would have to move to "shift" in order to train on the ventilation hoods on nights and/or weekends. (*Id.*; ECF No. 32-3 at 5-6 (16:24-17:15).) Shift work is defined as "nights and days" on a rotation, where Plaintiff could actually work with the equipment and simulate. (*Id.* at 6 (19:16-20:2).) At this point Plaintiff told Franklin that he was on a work restriction and that he could not perform shift work at night. (ECF No. 32-2 at 19 (71:9-20).) Franklin then described what the procedure would be if Plaintiff could not qualify for the Facility Operators Watchstation and the accommodations process that could be undertaken to help Plaintiff qualify.[2] (*Id.* at (71:9-72:10).) Franklin also suggested that Plaintiff needed to go to his doctor in order to be released from his work restriction. (*Id.* at 20 (74:12-25); ECF No. 32-3 at 7 (22:12-22).)

In August 2013, Plaintiff met with Donna Fowler in Human Resources to discuss the reason Plaintiff was being asked by Franklin to be relieved of his work restriction. (ECF No. 32-2 at 22 (83:6-20).) On August 26, 2013, Plaintiff e-mailed Fowler stating that he would be willing to work after 5pm if necessary, and Fowler relayed to Plaintiff that a meeting was being planned to discuss how to handle Plaintiff's work restriction. (ECF No. 32-5 at 2 ¶ 7; ECF No. 32-2 at 70.) On September 12, 2013, a "Path Forward" meeting was held with representatives from Human Resources and Plaintiff's managers to discuss options for accommodating Plaintiff's work

---

[2] Plaintiff was considered a "full service" employee, therefore the accommodations process includes in order of progression: (1) see if the employee can be reasonably accommodated in their current position, (2) if the employee cannot be accommodated then efforts are made to find vacant positions at the same grade level, or at a lower grade level, (3) if a job cannot be found, and there can be no reasonable accommodation then the employee would be "medically discontinued." (ECF No. 32-2 at 20 (73:23-25), 63.)

3

restriction. (ECF No. 32-5 at ¶ 8.) It was the group's decision that they needed more information from Plaintiff's treating physician before it could move forward with any accommodations. (*Id.* at 2-3 ¶ 9.)

On September 19, 2013, Franklin and Cindy Lyons met with Plaintiff and informed him that the reasonable accommodations process had begun and that if he felt that his restrictions were no longer permanent, then he should be reevaluated by his doctor. (ECF No. 32-2 at 24 (90:22-91:22); *see also* ECF No. 32-2 at 69.) Plaintiff was instructed that if his doctor lifted his restrictions, then by October 14, 2013 he was to give a letter to Dr. Johnson, the onsite SRNL physician, stating that his doctor had lifted his restrictions. (ECF No. 32-2 at 69.) Plaintiff testified that he understood where to take the letter from his doctor. (ECF No. 32-2 at 25 (93:21-22).) On September 24, 2013, Plaintiff met with his treating physician and requested that his work restriction be lifted for two months (*id.* at 24 (92:3-6)), which his physician granted (*id.* at 21 (78:13-23), 56). Plaintiff turned the letter in to Defendant in early October 2013. (*See id.* at 56).

After the September 19, 2013 meeting, Plaintiff had another meeting with Willie Bell from EEOC, Ned Baynham from Human Resources, Fowler, Franklin, and Lyons. (*Id.* at 25-26 (95:25-98:25).) During this meeting Plaintiff testifies he was informed that there were no more jobs available for him. (*Id.* at 26 (99:13-100:9).)

In October 2013, Plaintiff contacted Pat Smith in Human Resources to discuss his eligibility to retire. (*Id.* at 29 (110:23-111:9).) Plaintiff testifies that he told Smith that "there wasn't another job available and that [he] would be medically discontinued [because of this fact]" (*id.* (111:2-6)), and Plaintiff testifies that Smith told him that "it would be better for [him] to take earlier retirement than to be medically discontinued and that's when [he] decided to take retirement" (*id.* (111:6-9)). On October 9, 2013, Plaintiff notified Fowler that he was retiring

4

effective October 31, 2013. (*Id.* at 29-30 (112:25-113:2)); (*see also* ECF No. 38 at 166 (e-mail to Fowler).)

## II. RELEVANT PROCEDURAL BACKGROUND

On March 21, 2016, Plaintiff filed a Complaint against Savannah River Nuclear Solutions, and Savannah River Nuclear Solutions, LLC under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (ECF No. 1.) On March 27, 2017, SRNS, LLC filed a Motion for Summary Judgment (ECF No. 32), and on April 19, 2017, Plaintiff responded (ECF No. 37).[3] On April 26, 2017, SRNS, LLC replied. (ECF No. 39.) On January 19, 2018, Magistrate Judge Thomas E. Rogers, III filed the Report (ECF No. 49.) On February 2, 2018, Plaintiff filed an Objection to the Report (ECF No. 50), and on February 16, 2018, SRNS, LLC replied (ECF No. 51).

## III. JURISDICTION

The court has jurisdiction over Plaintiff's claims via 28 U.S.C. § 1331, as they arise under laws of the United States. Plaintiff brings his claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

## IV. LEGAL STANDARD

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e) for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court, which has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made. Fed. R. Civ. P. 72(b)(2)-(3). "The district judge may

---

[3] On April 20, 2017, Plaintiff filed additional attachments to his Response. (ECF No. 38.)

5

accept, reject, or modify the recommended disposition; receive further evidence, or return the matter to the Magistrate Judge with instructions." *Id.* at 72(b)(3).

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Pignons S.A. De Mecanique v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981)). The nonmoving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). "[T]he burden [to show no genuine issue of material fact] on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non[-]moving party's case." *Celotex Corp.,* 477 U.S. at 325.

"In [ ] a situation [where a party fails to make a showing sufficient to establish an essential element of their case, on which they will bear the burden of proof at trial], there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23.

## V. ANALYSIS

The Magistrate Judge found that Plaintiff stated two claims under the ADA, the first being Defendant's failure to provide Plaintiff reasonable accommodations, and the second being constructive discharge. (ECF No. 49 at 1, 11, 18.) Plaintiff seems to combine these two claims together; however, the court will address Plaintiff's objections as to each claim separately.

a. <u>Failure to Provide Reasonable Accommodations</u>

Plaintiff states similar arguments in his objection (ECF No. 50) and her Response (ECF No. 37) to Defendant's Motion for Summary Judgment. However, to the extent that Plaintiff specifically objects to the Magistrate Judge's finding in regard to Defendant's failure to provide Plaintiff with reasonable accommodations, the court will address this objection.

"In a failure to accommodate case, a plaintiff establishes a prima facie case by showing '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations.'" *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting *Mitchell v. Washingtonville Ctr. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)).

It is undisputed that Plaintiff was regarded as having a disability under the ADA due to his sleep apnea and evidenced by his work restrictions, therefore, he was disabled for purposes of the statute. (*See* ECF No. 32-2 at 10 (34:20-35:14); ECF No. 37-1 at 2; ECF No. 37-4 at 2.); *see also* 42 U.S.C. § 12102(3)(A). It is also undisputed that Defendant had notice of his disability. (*See* ECF No. 32-3 at 6 (20:3-19).) Whether Plaintiff could perform the essential functions of the Production Operator position with a reasonable accommodation and whether Defendant refused to make such accommodations are at issue.

With respect to Plaintiff's ability to perform the essential functions of a Production Operator with a reasonable accommodation, the court must determine the essential functions of Plaintiff's job as a Grade 18 Production Operator, and second whether the proposed accommodations were reasonable. "[A] function may be essential because the reason the position exists is to perform that function" or "[t]he function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2)(i),(iii). "Evidence of whether a particular function is essential includes, but is not limited to: (i) [t]he employer's judgment as to which functions are essential. . . [and] (iv) [t]he consequences of not requiring the incumbent to perform the function." *Id.* at § 1630.2(n)(3)(i),(iv). Part of the essential duties of a Grade 18 Production Operator are to "[o]perate process controls [and equipment], and to [q]ualify on all Grade 18 duties and maintain qualifications." (ECF No. 38 at 149.)

In order to qualify as a Grade 18 Production Operator, Plaintiff had to be qualified to work in three (3) different watchstations, including the Facility Operators Watchstation. (ECF No. 32-3 at 17 (61:24-62:23)); (*see also* ECF No. 32-3 at 21.) Part of Plaintiff's qualification process for the Facility Operators Watchstation was to participate in a walkthrough with Franklin, and the

purpose of the walkthrough was for Franklin "to determine the knowledge level of [Plaintiff] in the area of facility operations." (ECF No. 38 at 130.) When Plaintiff performed his walkthrough there are several notations on evaluation forms that note that Plaintiff was "weak" in some areas, or "did not know the location" of certain systems. (*Id.* at 132-147); (*see also* ECF No. 32-3 at 5 (16:3-14).) Because of Plaintiff's performance on the walkthrough, he was not qualified for the Facility Operators Watchstation, which is essential for the job of a Grade 18 Production Operator. (*See* ECF No. 32-3 at 21.)

Due to Plaintiff's failure to qualify on the Facility Operators Watchstation, Plaintiff would be required to work some night shifts which was not in line with his work restrictions. (ECF No. 32-2 at 19 (71:9-20).) Therefore, the court must inquire into whether Defendant could have offered other reasonable accommodations that would allow Plaintiff to fulfill the essential elements of a Grade 18 Production Operator without opposing Plaintiff's work restrictions.

There are two steps to determine whether an accommodation is reasonable, "(1) was the specific accommodation Plaintiff requested reasonable, and (2) if Defendant had granted the accommodation could Plaintiff perform the essential functions of the position." *See Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 580 (4th Cir. 2015).

A "reasonable accommodation" is defined as:

"(i) modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or (ii) modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or (iii) modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1).

In addition, as part of the ADA's definition of reasonable accommodation, it provides that,

"[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). There is a dual burden to engage in the interactive process. *See Crabill v. Charlotte Mecklenburg Bd. of Educ.,* 423 F. App'x 314, 323 (4th Cir. 2011) (unpublished opinion) ("[N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability.") (quoting *Beck v. Univ. of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1135–36 (7th Cir. 1996)). "The interactive process 'is not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job functions of the position sought.'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) (quoting *Rehling v. City of Chi.*, 207 F.3d 1009, 1015 (7th Cir. 2000)).

"An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested. Rather, the employer may provide an alternative reasonable accommodation." *Reyazuddin v. Montgomery Co., Maryland*, 789 F.3d 407, 415 (4th Cir. 2015) (citing *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996)). "Nonetheless, 'a reasonable accommodation should provide a meaningful equal employment opportunity. Meaningful equal employment opportunity means an opportunity to attain the same level of performance as is available to nondisabled employees having similar skills and abilities.'" *Id.* (quoting H.R.Rep. No. 101–485, pt. 2, at 66 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 349).

Plaintiff asserts that he should have been able to simulate the requirements for the Facility Operators Watchstation rather than being moved to the night shift in violation of his work

restriction.[4] (ECF No. 50 at 3.) Part of the issue with Plaintiff's ability to qualify for the Facility Operators Watchstation is that Plaintiff had a "weak" understanding of how to operate the ventilation systems and fans (ECF No. 32-2 at 15 (53:12-13)), and Plaintiff testified that these fans could only be turned off at night and on weekends when technicians were not working due to the fans' function of removing radioactive particles (ECF No. 32-2 at 18 (65:16-66:25)). Plaintiff also testified that simulation could be used to qualify for the Facility Operators Watchstation, and that he had performed simulations many times in his career as a Production Operator. (ECF No. 32-2 at 18 (68:15-24).) However, Plaintiff was not aware of anyone who was allowed to perform a simulation on the specific process of operating the ventilation hoods. (*Id.* at 19 (69:21-24).)

When Plaintiff informed Franklin of his inability to work the night shift given his work restriction, Defendant initiated an interactive process to try to accommodate Plaintiff's disability, as evidenced by its September 12, 2013 "Path Forward" meeting where it was determined that Defendant needed more information from Plaintiff's physician before moving forward with accommodations. (ECF No. 32-5 at 2-3 ¶ 9.) Plaintiff obtained a letter from his physician stating that he could be released from his restrictions for two (2) months and turned it into Defendant in early October 2013. (*See* ECF No. 32-2 at 56.) However, on October 9, 2013, a short time after his doctor's letter was turned in, Plaintiff retired and the interactive process was discontinued. (ECF No. 32-2 at 29-30 (112:25-113:2), 72; *see also* ECF No. 32-5 at 4 ¶ 15.)

As the Magistrate Judge stated, it seems like Plaintiff retired because he did not receive the accommodation he wanted. (ECF No. 49 at 16.) "An employer is not obligated to provide an employee the accommodation he or she requests or prefers; the employer need only provide some

---

[4] The court finds no evidence that Plaintiff ever requested to simulate the operations and procedures for the Facility Operators Watchstation, but will assume that simulation of these operations and procedures was a possible reasonable accommodation.

reasonable accommodation." *Crawford v. Union Carbide Corp.*, 202 F.3d 257 (4th Cir. 1999) (unpublished opinion) (quoting *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998)). Plaintiff wanted to fulfill his qualifications for the Facility Operators Watchstation through a simulation, however, Franklin testified that Plaintiff was already given the opportunity to simulate the required operations and procedures for the Facility Operators Watchstation before going through the walkthrough. (ECF No. 32-3 at 6 (18:18-20).) Additionally, Willie Bell from Human Resources testified that Plaintiff had two opportunities to be demonstrate his knowledge of the operations and procedures regarding the Facility Operators Watchstation using simulation and because he did not pass either simulation a walkthrough with Franklin was planned. (ECF No. 32-4 at 7 (21:21-22:10)); (*see also* ECF No. 37-2 at 3.)

It is not certain that with a reasonable accommodation, Plaintiff would be able to perform the essential elements of the job as evidenced by Bell's comments. Moreover, even if Plaintiff was allowed to simulate the requirements for the Facilities Operation Workstation, he would still have to qualify for the Control Repair Watchstation in order be fully qualified. (*See* ECF No. 32-3 at 21.) There is a dispute of fact as to whether it was reasonable under the circumstances to allow Plaintiff to qualify for the job of Production Operator through simulation, or if the simulations would allow him to perform the essential functions of a Grade 18 Production Operator. However, Plaintiff fails to provide sufficient evidence as to the fourth element of his prima facie case, therefore, these issues of fact are not material.

As to the last element of Plaintiff's prima facie case for failure to accommodate, Plaintiff has to present evidence that Defendant refused to provide a reasonable accommodation that would allow him to perform the essential elements of the job. Plaintiff has provided no evidence that the Defendant refused to accommodate him, just that Defendant had not provided the accommodations

that he wanted. Plaintiff also provides no evidence that Defendant was not engaging in the interactive process. As stated above, once Plaintiff told Franklin about his work restriction, Defendant began trying to accommodate Plaintiff and created a panel to determine how Defendant could reasonably accommodate Plaintiff. (*See* ECF No. 32-5 at 2-3 ¶ 9; ECF No. 32-2 at 19 (71:9-72:10).)

Defendant tried to accommodate Plaintiff's disability and has presented evidence showing that it was in the midst determining an accommodation when Plaintiff retired. (*See* ECF No. 32-3 at 10 (34:14-36:20).) Defendant made a good faith effort to accommodate Plaintiff and the evidence shows that it worked with Plaintiff to try to formulate some form of an accommodation and the parties might have if Plaintiff did not retire during the process. Because Plaintiff has the burden to demonstrate that Defendant refused to make a reasonable accommodation for him, Plaintiff's lack of evidence demonstrating Defendant's refusal to accommodate him is fatal to his claim. *See Celotex*, 477 U.S. at 322-23.

b. Constructive Discharge

In the Fourth Circuit, "[a]n employee is entitled to relief absent a formal discharge, 'if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit.'" *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995)); *see also Bristow v. Daily Press*, 770 F.2d 1251 (4th Cir. 1985) (applying constructive discharge doctrine to a claim under the Age Discrimination in Employment Act (ADEA)); *Jones v. Greenville Hosp.*, 166 F.3d 1209 (4th Cir. 1998) (Unpublished Opinion) (applying constructive discharge doctrine to ADA claim).

Plaintiff bears the burden of proving that he was constructively discharged under the ADA. Therefore, if Plaintiff fails to provide sufficient evidence that he was constructively discharged,

then there is no dispute as to any genuine material fact. *See Celotex*, 477 U.S. at 322-23. The court finds that Plaintiff has failed to provide sufficient evidence that he was constructively discharged.

"A plaintiff alleging constructive discharge must [ ] prove two elements: (1) deliberateness of the employer's action, and (2) intolerability of the working conditions." *Bristow*, 770 F.2d at 1255 (citations omitted). "To prove deliberateness, the plaintiff must prove 'that the actions complained of were intended by the employer as an effort to force the employee to quit.'" *Whitten v. Fred's Inc.*, 601 F.3d 231, 248 (4th Cir. 2010) (quoting *Martin*, 48 F.3d at 1354).[5] "To act deliberately . . . requires intent . . . to force an employee to leave . . . [which] [ ] may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions . . . ." *Bristow*, 770 F.2d at 1255 (internal citations omitted); *see also Martin*, 48 F.3d at 1356 (an employee may prove his employer's intent by demonstrating that an employee's resignation was "the foreseeable consequence [ ] of [the employer's] conduct.") (quoting *Radio Officers' Union of Commercial Telegraphers Union v. NLRB*, 347 U.S. 17, 45 (1954)). "Intolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow*, 770 F.2d at 1255 (citations omitted). "An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." *Id.*

The court finds that Defendant did not act deliberately in an attempt to force Plaintiff to retire. Plaintiff asserts that Defendant forced him to retire by failing to accommodate his disability and by forcing him "to choose between his health or his job." (ECF No. 50 at 3–4.) "Failure to accommodate does not create a constructive discharge, per se, although 'a complete failure to

---

[5] *Vance v. Ball State University*, 570 U.S. 42 (2013) abrogated *Whitten* on other grounds.

accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge.'" *Carter v. Centura College*, No. CIV. A. 2:10–00907–CWH, 2012 WL 638800, at *12 (D.S.C. Feb. 27, 2012) (citing *Johnson v. Shalala*, 991 F.2d 126, 132 (4th Cir. 1993)).

As noted above, the court finds that Defendant did not fail to accommodate Plaintiff because Plaintiff has put forth no evidence to show that Defendant refused to accommodate him. Therefore, the court finds that Defendant's actions do not amount to a complete failure to accommodate. Notably, Plaintiff retired before Defendant could finish its accommodation process. (ECF No. 32-3 at 10 (34:14-36:20).)

Plaintiff also asserts that he retired under duress because Pat Smith from Human Resources told him that his only option was to retire. (*See* ECF No. 50 at 3.) If this assertion were true, it could provide some indicia of an intent by Defendant to force Plaintiff to retire. However, this assertion is contradicted by Plaintiff's own testimony which states that "[Smith] said it would be better for [Plaintiff] to take earlier retirement than to be medically discontinued and that's when [he] decided to take retirement." (ECF No. 32-2 at 29 (111:6-9).) Smith made this recommendation in response to Plaintiff's statement that "there wasn't another job available and that [he] would be medically discontinued." (*Id.* at (111:2-4).) Plaintiff came to the conclusion that there were no alternate jobs available based on a meeting that he had with Franklin, Lyons, and Baynham. (ECF No. 32-2 at 26 (99:13-24).) Plaintiff testified that he asked Baynham if there were any more day jobs for him anywhere else on site, and Baynham told him no. (*Id.*) However, Plaintiff did not recall whether he asked only about Grade 18 jobs, or both Grade 18 and Grade 16 jobs. (*Id.* at 100:1-7).)

Plaintiff's assertion that he was told that his only option was to retire was rebutted by his

15

own testimony, and moreover, Plaintiff has not provided any evidence that Defendant did not accommodate him with the intent to make him quit. The accommodations process was still ongoing when he retired, and only was discontinued because Plaintiff retired. Therefore, the court finds that because Plaintiff has failed to provide evidence of Defendant's intent to force him to resign, Defendant's Motion for Summary Judgment (ECF No. 32) must be granted. Because Plaintiff is unable to demonstrate the deliberateness prong of constructive discharge, the court makes no finding as to the intolerability prong of this claim.

## VI. CONCLUSION

For the reasons stated above, the court **ACCEPTS** the Report (ECF No. 49), and **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 32).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 31, 2018
Columbia, South Carolina